1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                         EASTERN DISTRICT OF CALIFORNIA

10

11   TWO BAY PETROLEUM,                    No. 2:05-CV-2335-MCE-JFM

12              Plaintiff,

13        v.                               MEMORANDUM AND ORDER

14   UNITED STATES DEPARTMENT
     OF THE INTERIOR; GALE
15   NORTON, Secretary, Bureau
     of Land Management,
16
                Defendants.
17
                              ----oo0oo----
18

19        Through the present action, Plaintiff Two Bay Petroleum,

20   Inc., ("Two Bay") seeks to have the decision of the Interior

21   Board of Land Appeals ("IBLA") terminating Two Bay's CACA 25325

22   oil and gas lease ("Lease") set aside.[1]  Two Bay asks this Court

23   to declare IBLA's decision invalid because it was allegedly

24   arbitrary, an abuse of discretion and factually unsupported.

25   ///

26

27        [1] Because oral argument will not be of material assistance,
     the Court orders this matter submitted on the briefs.  E.D. Cal.
28   Local Rule 78-230(h).

1

1 Plaintiff further argues that the Lease could not be terminated

2 due to estoppel, and that IBLA's no-hearing decision violates due

3 process.  For the reasons set forth below, Two Bay's Motion is

4 DENIED.

5

6                              **BACKGROUND**

7

8     The subject oil and gas lease, CACA 25325, was issued as a

9 ten-year non-competitive lease to a Mr. Ptasynski on December 1,

10 1989.  On October 21, 1991, Mr. Ptasynski transferred operating

11 rights for a portion of the Lease to Two Bay, and in 1997, filed

12 an assignment of record title.  Two Bay applied for a permit to

13 drill a well entitled Well Ptasynski 56-3 ("Well 56-3"), which

14 was approved by the Bureau of Land Management ("BLM") on April 1,

15 1992.  Well 56-3 is the only well on the subject Lease.

16     Well 56-3 was completed in April of 1993.  According to

17 monthly reports of operations submitted to the Minerals

18 Management Service ("MMS"), 13 barrels of oil and 1,000 cubic

19 feet of gas were produced between April and August of 1993.  No

20 additional production was reported from August 1993 until

21 November 1999.

22     On February 16, 1994, Two Bay submitted a temporary

23 abandonment request for Well 56-3, citing unfavorable economic

24 conditions.  The BLM approved the request, but only for a period

25 of twelve months and with no possibility of extension.  The

26 approval required Two Bay to return the well to production at the

27 end of the period, or plug and abandon the well permanently.

28 ///

1 On June 24, 1998, Two Bay submitted a sundry notice to re-

2 complete the well and return it to production.  BLM approved the

3 notice two days later.  Two Bay completed the requested work on

4 August 15, 1998, on which day Well 56-3 "made 4 swab runs ... no

5 oil or gas shows."  Administrative Record ("AR") 988-89.

6      On November 15, 1999, Two Bay submitted another sundry

7 notice to do additional perforations, which the BLM's Bakersfield

8 Field Office ("BFO") approved on November 30, 1999.

9      On December 1, 1999, the BLM met with David Hanson, Two

10 Bay's president, to discuss the Lease.  The BLM informed

11 Mr. Hanson that the Lease had expired under its own terms on

12 November 30, 1999, because inspections indicated it was not

13 producing.  Additionally, Two Bay had not paid rental fees to the

14 MMS.  Mr. Hanson did not indicate at the meeting that Well 56-3

15 had been returned to production prior to the expiration of the

16 Lease.  However, the BLM received a letter from Two Bay dated

17 December 15, 1999, stating that Well 56-3 was returned to

18 production on November 29, 1999, one day prior to Lease

19 expiration.  Delinquent rental fees were also paid to the MMS.

20      By memorandum dated February 10, 2000, the BLM recommended

21 that the Lease not be extended due to non-production in paying

22 quantities at the expiration of the original term.  The BLM

23 issued a termination on May 11, 2000, which Two Bay appealed.

24 Due to the BLM's failure to respond to the appeal, and because

25 "BLM's decision contained no finding that there was no well

26 capable of production on the lease," the BLM rescinded the

27 termination on February 22, 2002.  AR 702-03, 748-50.

28 ///

3

1  From December 1, 1999, to December 30, 2000, Two Bay reported a

2  production of 643 barrels of oil to MMS.  However, Two Bay did

3  not provide "run tickets" to verify and document the production

4  of the report oil.  To further complicate the situation, oil from

5  Well 56-3 was commingled with oil from other Two Bay wells

6  without proper authorization.  AR 968-69.[2]  Two Bay reported no

7  further production after December 30, 2000.  AR 933.

8      The BLM conducted numerous site inspections prior to

9  July 26, 2002, showing that the well was either not operating,

10 insufficiently supplied with equipment to produce or disconnected

11 from the storage tank and not producing.  Based on these

12 inspections and the lack of production, the BLM issued a 60-day

13 notice finding that Well 56-3 had been in non-producing status

14 for more than three years.  This notice allowed Two Bay until

15 October 11, 2002, to return the well to production or pursue

16 alternative remedies, such as permanent abandonment or assignment

17 to another party.

18     BLM inspections occuring on August 7, 2002, and September 2,

19 2002, showed Well 56-3 was still down.  The September inspection

20 revealed that Well 56-3 was not physically connected to a test

21 tank.  Two Bay submitted a sundry notice seeking to explore for

22 oil at a different depth within the well, which the BLM approved

23 on October 2, 2002.  This approval required Two Bay to put Well

24 56-3 in production no later than October 31, 2002.

25 ///

26 ///

27

28     [2] Two Bay requested such authorization in October of 2002,
   two years after the alleged production.  AR 949.

4

1  Two Bay obtained permission from BLM to commingle production of

2  Well 56-3 with other nearby wells on November 26, 2002, subject

3  to the requirement that production from each well was measured

4  prior to commingling.

5      On October 31, 2002, a BLM inspector witnessed a test of

6  well production that yielded an extrapolated 1.38 barrels per

7  day.  As the well had not been in production for approximately 18

8  months, the BLM did not consider this test accurate due to "flush

9  production."[3]  Additionally, the percentage of water produced

10 (99%) and the pumper's concern that Well 56-3 "pumps off" easily

11 led the BFO to allow a longer period of time to measure accurate

12 production.  AR 676.

13     On November 20, 2002, the BLM inspector gauged Well 56-3's

14 tank and found no measurable amount of oil.  AR 691.  Seals

15 placed on the storage tank valves had not been broken, indicating

16 that no oil was previously removed from the tank.  *Id.*  On two

17 subsequent inspections, the BLM inspector found Well 56-3 in a

18 non-operating state.  AR 1194-95, 1191-92.  A December 19, 2002,

19 inspection found no measurable fluids in the bottom of the tank.

20 AR 1189-90.

21 ///

22 ///

23 ///

24

25      [3] "Flush production" may occur when a well has been unused
   for a lengthy period of time.  The well bore is filled with
26 fluids to the point of pressure equalization, misrepresenting the
   underground oil reservoir's capacity of supplying fluid to the
27 well bore in a consistent fashion.  A test of longer duration
   than the 73-minute test carried out on October 31, 2002, would
28 yield more accurate measurements of Well 56-3's oil producing
   capacity.  AR 597.

1    On January 14, 2003, the BLM inspector gauged Well 56-3's
2   tank with a water-sensitive paste.  This inspection showed
3   approximately 10.5 inches of water and one inch of oil atop the
4   water.  AR 599, 1186.  The inch of oil equated to roughly five
5   barrels of oil for Well 56-3's total production for the period of
6   October 2002, through January 2003, or 0.05 barrels of oil per
7   day.  AR 676-677.

8    Visits in late January and early February of 2003, showed
9   that Well 56-3 was again down.  AR 1179-82.  On April 1, 2003,
10  the BLM field office recommended that the California State office
11  terminate the Lease for non-production.  AR 947-48.  On April 12,
12  2003, the BLM inspector witnessed the loading of roughly 150
13  barrels of oil into a transportation truck.  AR 1174-76.
14  However, Two Bay did not submit run tickets, monthly reports to
15  MMS or royalty fees for this alleged production.

16   On May 5, 2003, the BLM terminated the lease due to
17  cessation of production and lack of production in paying
18  quantities, effective October 11, 2002.  Two Bay subsequently
19  filed a notice of appeal and requested a stay of the termination.
20  The IBLA denied the stay by order, and issued a ruling on the
21  merits on September 2, 2005.  The IBLA amended the BLM
22  termination order, finding the Lease to have terminated by
23  operation of law in December 2000.
24  ///
25  ///
26  ///
27  ///
28  ///

1                              **STANDARD**

2

3      **A.    Final Decisions of the IBLA**

4

5          Final Decisions of the IBLA are reviewed under the

6      Administrative Procedures Act, 5 U.S.C. § 706(2).

7      The reviewing court shall "hold unlawful and set aside agency

8      action, findings and conclusions found to be - ... (A) arbitrary,

9      capricious, an abuse of discretion, or otherwise not in

10     accordance with the law; (B) contrary to constitutional right

11     ...; or (C) in excess of statutory jurisdiction, authority, or

12     limitations ...." *Fallini v. Hodel*, 963 F.2d 275, 277 (9th Cir.

13     1992) (quoting 5 U.S.C. § 706(2)).

14         The Court's review is limited to the administrative record

15     already in existence. *Camp v. Pitts,* 411 U.S. 138, 142 (1973).

16     The court cannot merely substitute its judgment for that of the

17     IBLA, but must instead determine from the administrative record

18     whether the decision of the IBLA was arbitrary, capricious, an

19     abuse of discretion, unsupported by substantial evidence or not

20     in accordance with the law. *See United States v. Wharton*, 514

21     F.2d 406, 408-409 (9th Cir. 1975).

22         Thus, the court must determine from the administrative

23     record whether the agency examined the pertinent evidence and put

24     forth a satisfactory explanation for its action. *Motor Vehicle*

25     *Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43

26     (1983).  The explanation must include a "rational connection

27     between the facts found and the choice made." *Burlington Truck*

28     *Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962).

1  The court will only find an arbitrary decision where there has

2  been a clear error of judgment in light of the relevant factors.

3  *Bowman Trans., Inc. v. Arkanssa-Best Freight Sys., Inc.*, 419 U.S.

4  281, 285 (1974).

5      The IBLA decision must also be supported by sufficient

6  evidence.  The reviewing court must search the entire record to

7  determine whether it contains evidence such that a reasonable

8  mind would find it adequate to support the agency's decision.

9  *Hjelvik v. Babbitt*, 198 F.3d 1072, 1074 (9th Cir. 1999).

10

11     **B.     Interpretation of Statutes by Administrative Agencies**

12

13     The Court shows great deference to an administrative

14  agency's interpretation of the law which it is charged with

15  administering.  *Baker v. United States*, 613 F.2d 224, 227 (9th

16  Cir. 1980) (citing *Udall v. Tallman*, 380 U.S. 1, 16 (1965)).  The

17  Court must uphold the agency's interpretation unless it is

18  inconsistent with the unambiguous language of Congress. *Chevron,*

19  *U.S.A., Inc., v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837,

20  842-43 (1984).

21

22                          **ANALYSIS**

23

24     **A.     IBLA Properly Upheld the Decision of BLM**

25                **1.     Finding of Non-Producing Well**

26     The IBLA found Well 56-3 ceased production "at some point

27  well before the [BLM Bakersfield Field Office's] July 26, 2002,

28  notice was issued."  AR 9.

1  The IBLA relied on Two Bay's admission that Well 56-3 ceased

2  production in December of 2000, and the lack of assertion that

3  production was resumed at any point prior to July of 2002.  The

4  IBLA dismisses Two Bay's claims of production at some point

5  between October 2002, and March 2003, citing the lack of reports

6  to the MMS and other failures to comply with reporting

7  regulations.  AR 15.

8      Additionally, the IBLA found Well 56-3 incapable of

9  producing in paying quantities due to the results of the October

10 2002, well test and many subsequent inspections.  Two Bay argued

11 that incorrect measurements resulted in this finding, but Two Bay

12 could not produce any evidence in the form of royalty payments,

13 operational reports or separate flow metering required by the

14 authorization to commingle production of Well 56-3 with other Two

15 Bay wells.  AR 14-15.

16     The IBLA findings are not clearly erroneous in light of the

17 administrative record.  Well 56-3 last produced reported

18 quantities of oil in late 2000, several years before the

19 determination of the BLM.  The record reveals multiple BLM

20 inspections of Well 56-3, mostly resulting in reports of non-

21 operation or non-production.  These inspections occurred after

22 the BLM put Two Bay on a 60-day notice, requiring Well 56-3 to be

23 put back in operation, or at a minimum to diligently pursue

24 restoring the well to producing status.  The evidence

25 overwhelmingly suggests the Well 56-3 has not produced any

26 barrels of oil since December of 2000.

27 ///

28 ///

1 _____        **2.    Interpretation of Mineral Leasing Act**

2

3        Having found Well 56-3 to be non-producing, the IBLA

4 determined that the well did not fall under the exceptions to

5 termination by operation of law under the Mineral Leasing Act,

6 30 U.S.C. § 226 ("MLA").  AR 17-19.  These exceptions are set

7 forth in the MLA as follows:

8        No lease issued under this section which is subject to
         termination because of cessation of production shall be
9        terminated for this cause so long as reworking or
         drilling operations which were commenced on the land
10       prior to or within sixty days after cessation of
         production are conducted thereon with reasonable
11       diligence, or so long as oil or gas is produced in
         paying quantities as a result of such operations. No
12       lease issued under this section shall expire because
         operations or production is suspended under any order,
13       or with the consent, of the Secretary. No lease issued
         under this section covering lands on which there is a
14       well capable of producing oil or gas in paying
         quantities shall expire because the lessee fails to
15       produce the same unless the lessee is allowed a
         reasonable time, which shall be not less than sixty
16       days after notice by registered or certified mail,
         within which to place such well in producing status or
17       unless, after such status is established, production is
         discontinued on the leased premises without permission
18       granted by the Secretary under the provisions of this
         Act.
19

20 30 U.S.C. § 226(i).

21       Because Two Bay did not engage in reworking or drilling

22 operations within 60 days of December 2000, the IBLA found the

23 first exception not applicable.  Similarly, Two Bay did not

24 suspend production on order from or with consent of the Secretary

25 of the Department of the Interior, ruling out the second

26 exception.

27 ///

28 ///

10

1  The IBLA interpreted the third exception to apply to "...only a
2  situation where, *at the time production ceases,* there is on the
3  lease a well capable of production."  (citing *Steelco Drilling*
4  *Corp.*, 64 I.D. 314, 219 (1957)).  Having found Well 56-3
5  incapable of production, the IBLA determined that the third
6  exception did not apply.  This led to a conclusion that the Lease
7  terminated by operation of law as of the last date of production,
8  or December 2000.

9      As explained above, the Court defers to interpretations by
10 administrative agencies of the laws they enforce, and must uphold
11 the interpretation unless it is against the unambiguous language
12 of Congress.  *Chevron*, 467 U.S. at 837.  The IBLA's
13 interpretation is consistent with 30 U.S.C. § 226 (i), and
14 comports with a substantial body of administrative law cited in
15 the decision.  AR 9.

16     This Court finds the IBLA decision is not arbitrary,
17 capricious or an abuse of discretion.  The decision is supported
18 by a substantial amount of evidence in the administrative record.
19 Thus, the IBLA decision terminating the Lease by operation of law
20 as of December 2000, is found to be valid.

21

22     **B.   Estoppel**

23

24     Given the termination of the Lease in December 2000, Two
25 Bay's argument that the government is estoped due to approving
26 sundry notices in 2002 is unavailing.  Additionally, Two Bay has
27 not alleged any of the elements required for estoppel.
28 Consequently, Two Bay's estoppel argument fails.

11

1    **C.    Due Process**

2

3        "[N]otice of the ability to request a hearing is only

4    required where the operator or lessee offers credible evidence to

5    suggest that the well is capable of immediate production."

6    *Coronado Oil Co. v. U.S. Dept. of Interior*, 415 F.Supp.2d 1339,

7    1352 (2006).   A review of the administrative record demonstrates

8    little, if any, credible evidence to suggest Well 56-3 is capable

9    of immediate production.   As cited in the IBLA decision, Two Bay

10   did not submit information to the BLM or MMS regarding

11   production.   AR 15.   The IBLA was not arbitrary, capricious or

12   otherwise not in accordance with the law and correctly concluded

13   there was no issue of material fact regarding the production of

14   Well 56-3.

15

16                            **CONCLUSION**

17

18        For the reasons set forth above, Two Bay's Motion for Review

19   of IBLA's ruling is denied.

20        IT IS SO ORDERED.

21
     Dated: July 9, 2007

22

23                                    _____

24                                    MORRISON C. ENGLAND, JR.
                                      UNITED STATES DISTRICT JUDGE

25

26

27

28

                                    12